UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FATOUMATA SILLAH,

        Plaintiff,

    v.

SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No.  25-cv-07819-RFL

**ORDER DENYING SECOND MOTION
FOR PRELIMINARY INJUNCTIVE
RELIEF**

Re: Dkt. No. 32

On March 11, 2026, Plaintiff Fatoumata Sillah's First Amended Complaint was dismissed for failure to state a claim.  (Dkt. No. 31.)  Sillah was granted leave to amend with respect to her Title VII claim, because it was not clear that Sillah would be unable to plead administrative exhaustion with respect to that claim.  (*Id.* at 6.)  Specifically, the order noted record evidence of an Equal Employment Opportunity Commission ("EEOC") decision "dated March 28, 2025, addressing three EEOC charges filed by Sillah related to employment actions between 2018 and 2023."  (*Id.* at 4.)  The order then states that "[a]ssuming that Sillah's current claims are within the scope of federal jurisdiction arising from one of these EEOC charges . . . , and assuming that this action is not untimely, Sillah might be able to allege exhaustion by means of the EEOC process."  (*Id.* at 4.)

The following day, Sillah filed a motion seeking preliminary injunctive relief.  (Dkt. No. 32 ("Motion").)  Sillah argues that she can show administrative exhaustion.  First, she states that her current claims regarding national origin and religious discrimination in her reinstatement

1

process are a continuation of the same discriminatory conduct alleged in her EEOC charges. (Dkt. No. 34 ¶¶ 25–28.)  Sillah states that her 2018 charge relates to discrimination on the bases of her "national origin (African)" and "religion (Muslim)."  (*Id.* ¶ 26.)  Sillah further states that the 2018 charge related to conduct included "disparate treatment" and "harassment" such as "physical threats, working conditions, performance, and non-selection."  (*Id.*)  Sillah identifies this charge as the most directly related to her current allegations of discrimination.  Sillah states that her 2021 and 2022 charges are on the bases of her "national origin (African)" and retaliation, and relate to suspension (or threats thereof) and harassment.  (*Id.* ¶¶ 27–28.)  Regarding timeliness, Sillah acknowledged that she filed this action more than 90 days after the Social Security Administration ("SSA") issued a final agency action related to her EEOC charges, making the complaint untimely.  (Dkt. No. 39 at 2.)  However, she requests equitable tolling of the deadline because she was unhoused at the time of the final agency action, and because, at the time, she was focused on a related ongoing proceeding involving the Merit Systems Protection Board ("MSPB") through which she had recently been ordered reinstated.  (*Id.* at 2–3.)  Sillah also argues that a prior effort to file a lawsuit in late May 2025 should be considered as evidence of her diligence in seeking judicial review.  (*Id.*)[1]

"A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The Ninth Circuit also applies an alternative "sliding scale" approach to the *Winter* factors wherein "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  "'[S]erious questions going to the merits' and a balance of hardships that tips sharply

---

[1] The Motion raises several arguments already addressed in prior orders and also raises arguments that do not relate to administrative exhaustion.  This Order does not address arguments that have already been decided or that are not material to the determination of Sillah's Motion.

towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

"In determining whether a plaintiff has exhausted allegations that she did not specify in her administrative charge, it is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002), *as amended* (Feb. 20, 2002), *abrogated on other grounds by Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541 (2019). A charge that describes a pattern of discriminatory or harassing conduct can provide a basis for finding exhaustion as to later conduct that is "like or reasonably related" to the events charged. *Id.*; *Sosa v. Hiraoka*, 920 F.2d 1451, 1456–57 (9th Cir. 1990).

It is Sillah's burden on a request for preliminary injunctive relief to introduce enough facts about her past EEOC charges so that it can be determined whether they are part of the same pattern of conduct. On the existing record, Sillah has not raised a serious question as to this issue. For example, this action stems from alleged misconduct by employees in the SSA human resources department (Dkt. No. 34 ¶¶ 11, 13 (credentialling officer Ron Everette and manager Lori Ross); ¶ 14 (HR specialist Matthew Glenn)) and security guards who Sillah asserts are employed by the Federal Protective Service ("FPS"), not SSA (Dkt. No. 44 at 2). Based on the existing record, it cannot be determined whether these individuals or the human resources department and FPS more generally participated in the charged conduct between 2018 and 2023. Likewise, on the existing record it cannot be determined whether the "working conditions, performance, and non-selection" harassment and discrimination in the 2018 charge bears any relationship to the requirement at issue in this lawsuit that Sillah undergo further security screening.

Also, even if Sillah could show her past EEOC charges were related to this lawsuit, she has not shown that she timely filed this lawsuit after the SSA entered its final action.

3

Specifically, she admits she missed the 90-day deadline, 42 U.S.C. § 2000e-16(c), and has not carried her burden to show that she would likely be able to benefit from equitable tolling. Equitable tolling would require "(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." *Asuncion v. Hegseth*, 150 F.4th 1252, 1260 (9th Cir. 2025) (citation omitted).  Neither prong is satisfied on the current record.  While Sillah appears to have been experiencing upheaval at the time the SSA final action issued—she was unhoused, had been recently ordered reinstated to her job at the SSA, and was navigating the process of returning to work—the record does not establish the existence of "extraordinary circumstances" that would have prevented Sillah from discovering the email in her inbox notifying her of the SSA's action in time to appeal within the relevant deadline.  Furthermore, while Sillah points to her prior attempt to file an action in May 2025 as evidence of her diligence, the record indicates that this attempted filing would have sought review of her MSPB decision, not the SSA final action, which she admits she was unaware of. (Dkt. No. 32 at 3; Dkt. No. 39 at 2.)  Her attempt to appeal the MSPB decision cannot be the basis for equitable tolling with respect to seeking review of the outcome of the EEOC process. *See Welch v. S. Ca. Edison*, 378 F. App'x 621, 623 (9th Cir. 2010) (holding that plaintiff's filing of state law claims in state court was not evidence that plaintiff had actively pursued her judicial remedies with respect to her federal right-to-sue letter).

Finally, Sillah's reply makes reference to an MSPB decision on her petition for enforcement and a related Notice of Appeal Rights dated December 3, 2025.  (Dkt. No. 39 at 3, 8.)  Sillah has previously stated that she does not "seek adjudication of the merits of [that MSPB decision] at this time."  (Dkt. No. 26.)  To the extent that Sillah has changed her mind and now seeks review of the December 2025 MSPB decision on the petition for enforcement, that is not how she has pled her complaint, which was filed before that decision and is not styled as seeking review of it.  Nor has she submitted evidence about the decision sufficient to raise a serious question about it.  Indeed, she has not submitted a copy of the decision, or the pertinent administrative record.

In short, the record does not raise a serious question as to whether Sillah has exhausted her administrative remedies with respect to her current claim, and the Court does not reach the remaining *Winters* factors.  The Motion is **DENIED**.  Any amended complaint remains due on **<u>April 7, 2026</u>**.

        **IT IS SO ORDERED.**

Dated: April 3, 2026

RITA F. LIN
United States District Judge